**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| MICHAEL TOLBERT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:07-CV-426-PRC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by the Plaintiff, Michael

Tolbert, on December 10, 2007, and a Plaintiff's Opening Brief [DE 21], filed on July 7, 2008.

Plaintiff Tolbert requests that the Court reverse, or in the alternative, remand the Administrative Law

Judge's decision denying Plaintiff's claim for Supplemental Security Income ("SSI"). On July 31,

2008, the Commissioner filed a Memorandum in Support of the Commissioner's Decision. On

September 5, 2008, Plaintiff filed a Reply Brief. For the following reasons, the Court denies

Plaintiff's request to reverse and remand.

**PROCEDURAL BACKGROUND**

On December 30, 2003, Plaintiff Tolbert filed an application for SSI benefits, alleging

disability since March 20, 2003. Plaintiff's application was originally denied on March 2, 2004, and

also upon reconsideration on June 8, 2004. On June 21, 2004, Plaintiff filed a timely request for a

hearing. After receiving an unfavorable decision on February 1, 2006, Plaintiff filed a timely

request for review and the Social Security Administration Appeals Council remanded the decision for further proceeding and a new decision.

The next hearing was held on March 21, 2007, where Plaintiff and his attorney Charles F. Marlowe appeared via video teleconference in Gary, Indiana, before Administrative Law Judge Denise McDuffie Martin ("ALJ"), who was in Orland Park, Illinois. Vocational Expert Pamela Tucker ("VE") appeared and testified at the hearing. Dr. Daniel V. Girzadas, M.D. also testified as a medical expert.

In a decision dated May 25, 2007, the ALJ denied Plaintiff's application, finding that he did not have a disability within the meaning of the Social Security Act and that he could perform other jobs, which exist in significant numbers in the national economy. On July 6, 2007, Plaintiff filed a Request for Review with the Appeals Council. On October 25, 2007, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A. Background

Plaintiff was born in 1959 and was forty-three years old on the onset date of his alleged disability. Plaintiff has a high school education and previously performed work as a laborer.

## B. Plaintiff's Hearing

On March 21, 2007, the ALJ convened a video teleconference hearing at which Plaintiff, his attorney Charles Marlowe, Pamela Tucker, and Dr. Daniel V. Girzadas, M.D., appeared.

Plaintiff was the first person to testify at the hearing. During questioning by his attorney, Plaintiff discussed, among other things, injuries that he sustained to his left hand and the limitations that he had in trying to move his fingers, including the inability to bend some of them.

Plaintiff was next questioned by Dr. Girzadas. During this line of questioning, Plaintiff further discussed, among other things, the limited movement of the fingers on his left hand. Particularly, Dr. Girzadas asked Plaintiff to make a fist, but Plaintiff testified that he was unable to because, although he could bend his knuckles, he could not bend his fingers.

The VE then testified that she had an opportunity to review the file in this case and was present throughout the hearing. The ALJ asked the VE what kind of jobs a hypothetical person who was limited to "occasional handling and reaching with the left upper extremity, with frequent handling and fingering with the right upper extremity, and frequent reaching with the right shoulder, and occasional above the shoulder reaching with the left," lifting and carrying up to ten pounds, and performing an unskilled type job could perform. R. at 508. The VE testified that such an individual could not perform Plaintiff's past work, but could perform other regional work such as security monitor (600 positions available in the Chicago and Northwest Indiana area), information clerk (3,700 positions available in the Chicago and Northwest Indiana area), and credit authorization clerk (650 positions available in the Chicago and Northwest Indiana area). The VE testified that the jobs she identified were consistent with those found in the "Dictionary of Occupational Titles" ("DOT").[1]

---

[1]The DOT is published by the Department of Labor and provides detailed physical requirements for a variety of jobs.

Plaintiff's attorney then questioned the VE and asked her for the DOT numbers for each of the jobs that the VE identified. The VE gave the following DOT numbers: security monitor (DOT #372.667 and #379.367 (sedentary position)), information clerk (DOT #237.367), and credit authorization clerk (DOT #205.367). The VE provided the first six numbers for the jobs she identified and testified that when looking up the jobs in the DOT, there would be a general category, rather than specific job titles. Plaintiff's attorney further inquired into how the VE arrived at the number of jobs and whether the titles of the jobs she identified would be consistent with the "Selected Characteristics of Occupation." The VE testified that the titles were not identical because she was using the titles from the "Dictionary of Occupational Titles."

Plaintiff's attorney then modified the ALJ's hypothetical to include a person who could not use his left hand for handling and asked if that would affect the VE's answers. The VE testified that it would decrease the number of positions in half and would eliminate all sedentary, unskilled jobs. Plaintiff's attorney then altered the ALJ's hypothetical to include someone who suffered side effects from medication that caused him to lose three to four hours of activity, and asked if that would affect the VE's answers. The VE provided that the limitation would rule out all the jobs. Plaintiff's attorney asked no further questions.

**C. ALJ's Decision**

The ALJ found that Plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date. The ALJ concluded that Plaintiff had the residual functional capacity

("RFC") to lift and carry up to ten pounds frequently and occasionally. Particularly, the ALJ concluded that

> [Claimant] could sit, stand and walk 6 hours in an 8 hour work day. The Claimant can occasionally finger and handle objects with his left upper extremity and frequently with his right upper extremity. The claimant would be able to frequently reach with the right upper extremity shoulder and only occasionally above with his left upper extremity. The claimant would also have the ability to understand, remember and carryout [sic] unskilled tasks.

R. at 29.

The ALJ determined that Plaintiff was unable to perform his past relevant work. The ALJ found that Plaintiff's limitations, either singly or in combination, did not meet a listed impairment. Based on the VE's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff was capable of making a successful adjustment to other work existing in significant numbers in the national economy, such as security monitor, information clerk, and credit authorization clerk.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to [her] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995 (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are:

(1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2.

(2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3.

(3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4.

(4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5.

(5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience?  If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(I)-(iv); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000.  The ALJ must assess the RFC based on all relevant evidence of record.  *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)).  The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ.  *Id.* at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Requesting reversal or remand, Plaintiff argues in his opening brief that (a) the ALJ failed to resolve apparent conflicts between the VE's testimony and the DOT and (b) the ALJ failed to ask a complete hypothetical.  The Commissioner disputes each of Plaintiff's arguments and contends that the ALJ's decision is supported by substantial evidence.

### A.  VE questioning, SSR 00-4p, and the DOT

Plaintiff contends that the ALJ failed to identify and resolve apparent conflicts between the VE's testimony and the DOT, as is required by Social Security Ruling 00-4p.  The Commissioner contends that, consistent with SSR 00-4p, the ALJ inquired about conflicts and the VE's testimony

did not present any apparent conflict with the limitations set forth in the ALJ's hypothetical question.

> SSR 00-4p requires:
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and if the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704 at *4. The regulations allow the ALJ to rely on either the VE or the DOT when making a determination regarding available work for the claimant. *See* 20 C.F.R. § 404.1566(d), (e) (2007). SSR 00-4p requires an ALJ to ask a vocational expert about any possible conflicts between the VE's testimony and the DOT, and obtain a reasonable explanation for any apparent conflict. *Stark v. Astrue*, 278 F. App'x 661, 667 (7th Cir. 2008) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)). SSR 00-4p places the burden of making the DOT inquiry on the ALJ, not the claimant. *Prochaska*, 454 F.3d at 735. Once the ALJ inquires into whether a conflict exists, absent any apparent conflict, the ALJ may then reasonably rely on the VE's testimony. *See Stark*, 278 F. App'x at 667 (stating that where the VE's testimony did not present any apparent conflict with the DOT, the ALJ had no reason to doubt that the testimony was consistent with the DOT). The primary focus is on whether a conflict is apparent *at the time of the hearing*, and not afterwards. *See id.* (indicating that the absence of an apparent conflict at the time of the hearing supports that the ALJ satisfied her duty when examining the vocational expert).

In this case, at the conclusion of the ALJ's questioning of the VE, the ALJ asked the VE whether the jobs she identified were consistent with those found in the DOT, and the VE testified

9

that they were.  Accordingly, the ALJ clearly complied with the requirement under SSR 00-4p to ask about any conflicts between the VE's testimony and the DOT.  However, Plaintiff claims that the ALJ failed to resolve an apparent conflict that existed between the jobs identified by the VE and the DOT.

Based on the VE's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ ultimately found that Plaintiff was capable of making a successful adjustment to other work existing in significant numbers in the national economy, such as security monitor, information clerk, and credit authorization clerk.  Upon questioning by Plaintiff's counsel, the VE provided the first six DOT numbers for each of the three identified jobs.  Further, the VE testified that the three job titles that she provided were general categories rather than specific jobs.  Plaintiff now argues that, given the first six DOT numbers provided by the VE, the position of "security monitor" does not exist in the DOT, and the requirements of the other two jobs are inconsistent with the DOT.

However, Plaintiff failed to raise any inconsistency at the time of the hearing.  It was only after the hearing that Plaintiff asserted that there was a potential conflict between the VE's testimony and the DOT.  Although Plaintiff's attorney had the opportunity to question the VE and even asked her for the DOT numbers of the three jobs and whether they were a general category, Plaintiff's attorney failed to further inquire into the requirements of the jobs in more detail or ask the ALJ to keep the record open so that he could cross-check the jobs with the DOT to see if the numbers matched up and if the job descriptions matched Plaintiff's limitations.  *See Stark*, 278 F. App'x at 667 (finding that where the attorney failed to ask such detailed questioning or ask the ALJ to keep

10

the record open, no apparent conflict was raised). Therefore, because there was no apparent conflict at the time of the hearing, the ALJ satisfied her duty under SSR 00-4p when she examined the VE.

Although no conflict was apparent at the time of the hearing, a review of the testimony and DOT demonstrates that any actual conflict is minimal and does not require reversal of the ALJ's decision. Plaintiff first argues that an apparent conflict exists because, under the DOT number given by the VE, no such job exists in the DOT under the title "security monitor." At the hearing, the VE gave two DOT numbers for the job of "security monitor"–372.667 and 379.367. Although Plaintiff is correct that no job entitled "security monitor" exists in the DOT, under DOT #379.367-010, a job entitled "surveillance-system monitor" does exist. *See* DOT Listing 379.367-010. At the hearing, the VE testified that the job titles being given were only general categories and were not specific titles. When reviewing the job description listed under surveillance-system monitor, it is clear that this was the job that the VE was referring to. *See id.* The strength factor required for this position is "S" (sedentary work), only requiring an occasional exertion of up to ten pounds, which is consistent with the ALJ's finding that limited Plaintiff to sedentary work. Additionally, the specific vocational preparation required for this position is a level 2, which corresponds with Plaintiff's limitations.[2] *See* 20 C.F.R. § 416.968. Therefore, because the DOT description of surveillance-system monitor is consistent with the Plaintiff's assessed limitations, no conflict exists between the VE's testimony and the DOT. Again, this potential conflict was not apparent at the time of the hearing.

---

[2]The Dictionary of Occupational titles lists a Specific Vocational Preparation or "SVP" level for each described occupation. Skill definitions are listed in 20 C.F.R. § 416.968: unskilled corresponds with an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9.

Plaintiff further argues that the job of credit authorization clerk requires frequent reaching and handling and a conflict exists between this job, the VE's testimony, and the assessed RFC. However, the Court finds that this job is consistent with the Plaintiff's limitations. The VE testified that the DOT number for the credit authorization clerk job is 205.367. Under the DOT number 205.367-014, the job entitled "charge-account clerk" appears to be the job that the VE was referring to. *See* DOT Listing 205.367-014. Much like the surveillance-system monitor position, this job only requires an occasional exertion of up to ten pounds and is unskilled work. Further, there is no indication from the job description that it requires the ability to do frequent reaching and handling. This position largely requires Plaintiff to assist customers in filling out applications or fill the applications out for them, review applications, file credit applications, possibly check references and notify customers of acceptance or rejection of credit, possibly use an adding machine, and answer credit rating questions. *See* DOT Listing 205.367-014. Although Plaintiff raises the fact that the ALJ's decision limited him to no more than occasional handling of objects with his left hand and no more than occasional reaching above shoulder level with his left upper extremity, there is no indication that this job would require him to exceed those limitations. Further, the ALJ found that Plaintiff can still frequently handle objects with his right hand and can also frequently reach with his right upper extremity above shoulder level. Given that the requirements for this job do not appear to exceed Plaintiff's limitations and that Plaintiff failed to raise any potential conflict at the time of the hearing, no conflict exists and the ALJ could reasonably rely on the VE's testimony.

Finally, Plaintiff argues that the job of information clerk requires abilities outside of the ALJ's assessed RFC, thus raising an apparent conflict. At the hearing, the VE testified that the job of information clerk had the corresponding first six DOT numbers of 237.367. The Court notes,

however, that Plaintiff analyzes two information clerk positions under the DOT with entirely different DOT numbers than that provided by the VE. While the VE testified that information clerk fell under DOT #237.367, Plaintiff analyzes two information clerk positions that have the corresponding DOT numbers of 210.367-010 and 210.367-022, respectively. *Id.* Nonetheless, under this Court's review, consistent with the DOT number provided by the VE, this Court is able to identify two jobs entitled "information clerk." First, under DOT #237.367-018, a job entitled "information clerk" (with the alternate title of "travel clerk") is listed. *See* DOT Listing 237.367-018. Although the description provided for this position indicates that it only requires a specific vocational preparation at level 2, which corresponds with Plaintiff's limitations, the strength factor for this position requires light work, entailing exerting up to twenty pounds of force occasionally. *See id*; *See also* DOT - Appendix C. Here, the ALJ specifically found that Plaintiff had the RFC to lift and carry up to ten pounds frequently and occasionally. Accordingly, the strength level for this job exceeds the Plaintiff's limitations.

Second, under DOT #237.367-022, a job entitled "information clerk (clerical)" is listed. *See* DOT Listing 237.367-022. The description provided for this job, however, requires a specific vocational preparation at level 4, which would require over three months and up to and including six months to learn. *See id*; *See also* DOT - Appendix C. This job would be classified as semi-skilled work.[3] *Id.* Here, the ALJ limited Plaintiff to performing unskilled work. Unskilled work requires only thirty days of training or less. 20 C.F.R. § 416.968. Therefore, this job's requirements, by definition, exceed the Plaintiff's limitations.

---

[3]*Supra* note 2.

Accordingly, the job of information clerk requires abilities outside the ALJ's assessed RFC, which constitutes a conflict between the VE's testimony and the DOT. However, any error by the ALJ in accepting the VE's testimony that Plaintiff could perform the job of information clerk is harmless. Remand based on this inconsistency would not alter the outcome as there is no basis for finding that Plaintiff cannot perform the positions of security monitor and credit authorization clerk. *See Reider v. Astrue*, No. 07 C 7271, 2008 WL 2745958, at *14 (N.D. Ill. July 11, 2008) (holding that error was harmless where there was no basis for the court to find that plaintiff could not perform the other positions identified by the ALJ). Harmless errors in administrative proceedings do not require remand upon judicial review. *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003). Again, even accepting the VE's testimony on this point as being inconsistent with the DOT, this conflict was not apparent at the time of the hearing.

Accordingly, although there was a conflict between the VE's testimony and the DOT regarding Plaintiff's ability to perform the information clerk job, substantial evidence supports the ALJ's finding of sufficient jobs in the economy as Plaintiff can still perform the other two jobs. Therefore, the Court finds that there was no error in the ALJ's reliance on the VE's testimony as no apparent conflict existed at the time of hearing, and the ALJ complied with her duty under SSR 00-4p when examining the VE at the hearing.[4]

**B. The ALJ's hypothetical**

---

[4] Defendant argues that an ALJ can rely on a VE's testimony even if it conflicts with the DOT. Def.'s Resp. Br. at 8. However, given that the Court finds that any conflict here was harmless error, the Court need not address this issue.

Plaintiff next argues that the ALJ failed to ask the VE a complete hypothetical that included all of Plaintiff's limitations because the ALJ did not include Plaintiff's fingering limitation with his left upper extremity, and, therefore, the ALJ's hypothetical was deficient. The Commissioner contends that the ALJ's hypothetical incorporating other limitations related to Plaintiff's left upper extremity was sufficient to constitute a complete hypothetical.

To the extent that the ALJ relies on the VE's testimony, the hypothetical posed to the VE must include "all relevant limitations from which the claimant suffers" if they are supported by the medical evidence of record. *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) (citing *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994)). However, an incomplete hypothetical can be cured where the VE independently learned of the limitations and presumably accounted for them. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). A VE will be presumed to have accounted for the limitations not included in the ALJ's hypothetical where the VE reviews the record before the hearing and is present throughout the claimant's testimony. *Coleman v. Astrue*, 269 F. App'x 596, 600 (7th Cir. 2008); *Ragsdale v. Shalala*, 53 F.3d 816, 820 (7th Cir. 1995).

In her decision, the ALJ found that Plaintiff could "occasionally *finger and handle* objects with his left upper extremity and frequently with his right upper extremity." R. at 29 (emphasis added). In questioning the VE as to the jobs that would be available to Plaintiff, the ALJ posed a hypothetical that limited the hypothetical person to "occasional *handling and reaching* with the left upper extremity, with frequent handling and fingering with the right upper extremity." R. at 508 (emphasis added). The ALJ did not include any limitation on fingering with the left upper extremity in the hypothetical that she asked the VE. Plaintiff claims that the ALJ's failure to include a limitation of occasional fingering with the left upper extremity in her hypothetical, when such a

15

limitation was assessed in the ALJ's decision, constitutes an incomplete hypothetical and is error. The Commissioner claims that the ALJ's reference to other limitations on Plaintiff's left upper extremity in her hypothetical was sufficient to incorporate the fingering limitation. The Court, however, finds the Commissioner's argument to be unpersuasive. Seventh Circuit precedent is clear that the ALJ must include *all* limitations, supported by the medical evidence of record, in a hypothetical. *See Coleman*, 269 F. App'x at 600; *Kasarsky*, 335 F.3d at 543; *Steele*, 290 F.3d at 942; *Ragsdale*, 53 F.3d at 820; *Herron*, 19 F.3d at 337.

The ALJ failed to pose a complete hypothetical to the VE as she left out a limitation of occasional fingering with the left upper extremity. While the ALJ mentioned fingering with regard to Plaintiff's *right* upper extremity, she failed to do so with regard to Plaintiff's *left* upper extremity. The only limitations regarding Plaintiff's left upper extremity which the ALJ actually included in her hypothetical were in regard to "handling and *reaching*" with the left upper extremity, not *fingering*. R. at 508. Accordingly, the Court finds that the ALJ's hypothetical was incomplete.

Regardless, the incomplete hypothetical here is cured by the VE's review of the file beforehand and her presence throughout the hearing. *See Coleman*, 269 F. App'x at 600 (stating that "an incomplete hypothetical may be cured and the omitted limitations imputed to the vocational expert where the expert independently reviewed the record and was present during the hearing"). The VE testified that she had reviewed the file and was present throughout the hearing. Although the ALJ failed to include the fingering limitation in her hypothetical, knowledge may be imputed by the VE's presence at the hearing and prior review of the file. *Id.* By being present throughout the hearing, the VE heard Plaintiff's testimony, during questioning by his attorney and by Dr. Girzadas, regarding the limitations in moving the fingers on his left hand. Specifically, during this

16

line of questioning, Plaintiff discussed his inability to make a fist and bend some of the fingers on his left hand. Accordingly, the ALJ may impute knowledge to the VE of everything contained in the file and testimony. *Young*, 362 F.3d at 1003. As a result, even though the ALJ's hypothetical failed to include the limitation of occasional fingering of objects with the Plaintiff's left upper extremity, the ALJ is permitted to rely on the VE's testimony and properly assume that the VE included all of Plaintiff's limitations in her assessment of the jobs that Plaintiff could perform and in finding that Plaintiff was not disabled. *Id.* Accordingly, the incomplete hypothetical was cured and reversal and remand is unwarranted.

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** the Plaintiff's Opening Brief [DE 21] and **AFFIRMS** the decision of the ALJ in all respects.

SO ORDERED this 26th day of September, 2008.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record